UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Docket No.: 24-cr-10364-IT |
| | ) | |
| | ) | |
| TANIA FERNANDES ANDERSON | ) | |

## **SENTENCING MEMORANDUM**

Tania Fernandes Anderson rose to the Boston City Council from extraordinarily humble origins. Born in Cape Verde and brought to the United States at the age of ten, she quickly assimilated into the multicultural community of Roxbury. Despite a background marked by poverty and trauma, she persevered to make a life for herself and her family. As an adolescent attending high school, she worked multiple jobs, cared for younger siblings, and generally kept her family afloat. In adulthood, she has held steady employment in the human services field for over two decades. As a single mother, she raised two sons—one of whom is a college student and the other a service member. She also served as a foster parent, opening her home to many children experiencing housing instability or family dysfunction.

Ms. Fernandes Anderson's life experiences and visibility in the community ultimately brought her to the City Council. There, she saw herself as a voice for a marginalized community. In certain respects, she thrived in the political environment. Community leaders and constituents found her to be highly engaged and responsive. She cares deeply about her district and how it is affected by council business. She immersed herself in policy, serving as chair of the Ways & Means committee.

1

But in other aspects of her position, she proved less adept. As a councilor, she was vested with discretion to hire staff, set salaries, and award bonuses. Ms. Fernandes Anderson's instinct was to use her authority to uplift those she was closest to. She did not fully appreciate her role as a public steward, the need to set appropriate boundaries, and the importance of avoiding financial entanglements. As was widely reported, she hired family members and others in violation of conflict of interest rules, for which she was sanctioned. She also hired a longtime friend, awarded her a large bonus, and accepted a portion of that bonus back in cash—the conduct for which she now stands convicted.

Doing so was wrong and a violation of the public trust. Ms. Fernandes Anderson is devastated to have disappointed those who placed their trust in her. Although she cannot fully repair this breach of trust, she has resolved to be accountable for it. Ms. Fernandes Anderson has accepted responsibility, tendered a guilty plea, and relinquished her seat on the council. The Court's task is now to determine what sentence will be "sufficient, but not greater than necessary" to accomplish the purposes of sentencing under 18 U.S.C. § 3553. Ms. Fernandes Anderson is a first time offender with a guideline sentencing range of 0-6 months. Moreover, her background and personal qualities demonstrate that she is not at risk to reoffend and will be a valuable contributor to the community. As such, Ms. Fernandes Anderson asks the Court to impose a probationary sentence with a requirement that she complete a significant amount of community service.

## GUIDELINES ANALYSIS

The court must "begin sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Ms. Fernandes Anderson agrees with the guideline calculation contained in the presentence report. Under §2B1.1, the base

offense level is 7.  Due to the amount of loss, two levels are added pursuant to § 2B1.1(b)(1)(B).  Two more levels are added because the offense involved a breach of the public trust.  USSG §3B1.3.  Ms. Fernandes Anderson has accepted responsibility and therefore receives a two level downward adjustment under USSG §3E1.1(a).  Finally, Ms. Fernandes Anderson has zero criminal history points. Accordingly, she receives an additional two level downward adjustment under USSG §4C1.1.  With a criminal history category of I, the applicable guideline sentencing range is 0-6 months.

The applicable guideline range falls in Zone A of the Sentencing Table.  USSG §5C1.1(b) directs that "a sentence of imprisonment is not required, unless the applicable guideline in Chapter Two expressly requires such a term."  For zero point offenders whose applicable guideline range falls in Zone A, "a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate." §5C1.1, Application Note 10.

## FERNANDES ANDERSON'S BACKGROUND AND PERSONAL CHARACTERISTICS

Tania Fernandes Anderson's background is a both a story of the American Dream and the American Struggle.  Ms. Fernandes Anderson spent her early years in Cape Verde.  Her father was always absent; her mother was emotionally unstable.  When Ms. Fernandes Anderson was four years old, her mother traveled to the United States and left her and her younger siblings in the care of a teenage uncle.  While her uncle did his best to provide for them, Ms. Fernandes Anderson's childhood in Cape Verde was marked by extreme poverty.  Their home had no running water.  She and her siblings barely had enough to eat and often lacked clothing.

At the age of ten, Ms. Fernandes Anderson came alone to the United States.  Her younger siblings remained in Cape Verde.  She was told by her mother that if she wanted to see her younger siblings again, she would need to work to earn enough money to pay for their travel.  In

3

immigrating, Ms. Fernandes Anderson left behind the poverty of Cape Verde but found life in the United States to be a different kind of bleak. Her mother remained mentally unstable and was both physically and mentally abusive. Her mother also had a new husband, a man who sometimes acted inappropriately toward Ms. Fernandes Anderson. They remained very poor.

In this environment, Ms. Fernandes Anderson had no choice but to grow up fast. English came quickly to her and she adjusted well to school.[1] She performed well enough on entrance examinations to be admitted into the John D. O'Bryant High School in Roxbury, despite having only lived in the United States for a handful of years. She would go on to graduate. She also heeded her mother's advice and began working at the age of 13 in order to save money for her siblings' travel. Eventually, both of her younger siblings would come to join her. When they did, they were largely Ms. Fernandes Anderson's responsibility. Due to her mother's struggles with mental health, Ms. Fernandes Anderson took on a parental role. When contacted by the author of the presentence report, Ms. Fernandes Anderson's sister Aline confirmed that she and her brother were "primarily raised" by Ms. Fernandes Anderson and that she "constantly worked to provide" when not in school. PSR, ¶ 90. She recounted one instance in her childhood in which her sister "saved Christmas" by providing the tree and presents for family members when their mother had not. Id.

This sense of responsibility and work ethic continued into Ms. Fernandes Anderson's adulthood and enabled her to raise two sons as a single mother. Ms. Fernandes had her first child when she was approximately twenty years old. The father and Ms. Fernandes Anderson were involved for several years but separated after their son's birth. Although Ms. Fernandes

---

[1] Ms. Fernandes Anderson has an aptitude for languages and is fluent in Cape Verdean Creole, Portuguese, Spanish, and English. She also has conversational skills in French, Italian, and Arabic.

Anderson was the victim of domestic violence and emotional abuse, she maintained a cordial relationship with her son's father throughout his childhood, believing it necessary for her son's well being. Her eldest son is now 26 years, serves in the military, and last month fathered a son. Ms. Fernandes Anderson, now a grandmother, has been visiting and babysitting her grandchild regularly since stepping down from the City Council.

Ms. Fernandes Anderson also has a second son who is 19 years old. The father and Ms. Fernandes Anderson were briefly married when she was around 26 years of age, but separated quickly thereafter, with domestic violence again factoring into that decision. Ms. Fernandes Anderson receives child support from the father but otherwise has no contact with him. Ms. Fernandes Anderson's second son recently graduated high school and is attending Wentworth College in Boston. Neither of Ms. Fernandes Anderson's sons have had issues in school or with the law; she is immensely proud of the young men they are becoming.

For approximately ten years, Ms. Fernandes Anderson also raised a number of foster children alongside her two boys. Her decision to serve as a foster parent arose out of her own experience as a child in Cape Verde after her mother left for the United States and her admiration for her uncle, who cared for her in that absence. There was also some overlap with her work. Ms. Fernandes-Anderson has held a number of positions in the human services field, working as a case manager for a DCF-affiliated agency, a youth services organization, and the Boston Public Schools. Through those experiences—and her own—she well understood the importance of providing a stable home environment to vulnerable youth experiencing family dysfunction. She estimates that seventeen (17) children were placed with her for varying lengths of time.

Having resigned from the city council, Ms. Fernandes Anderson is now unemployed for the first time in many years. She has attempted to reflect on her experiences and learn from

5

them. She has spent time volunteering for a local community organization, New Beginnings Reentry Services, a trauma-informed reentry services program located in Dorchester. *See New Beginnings Letter.* Though there is a possibility this could blossom into a permanent role in the future, Ms. Fernandes Anderson has found the volunteer work to be therapeutic and a form of making amends. While her conduct in this case and conviction will certainly not be forgotten any time soon, she looks forward to returning to the sort of grassroots human services work which has defined her both personally and professionally. Judging by the many letters of support attached hereto, those who know Ms. Fernandes Anderson best are convinced that she is a person who will continue to make positive contributions to the community moving forward.

## SENTENCING RECOMMENDATION

As outlined above, the applicable sentencing guideline range for Ms. Fernandes Anderson is 0 to 6 months imprisonment. Because the recommended sentence falls within Zone A of the Sentencing Table, a sentence of imprisonment is not required. Indeed, Application Note 10 of §5C1.1 counsels against imprisonment for Zero Point Offenders like Ms. Fernandes Anderson, noting that a non-imprisonment sentence is "generally appropriate" in such instances. The Defendant submits that there is no reason to vary from these principles; if anything, Ms. Fernandes Anderson's history and characteristics suggest that her offense was aberration that will not be repeated. Accordingly, a sentence of probation is warranted and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Furthermore, Ms. Fernandes Anderson would not object to a special condition of probation requiring her to complete a substantial amount of community service. Ms. Fernandes

Anderson is contrite and wishes to make amends within the community insofar as she can.[2] A requirement of community service is particularly fitting where the offense involved a breach of the public trust. All in all, a probationary sentence coupled with a special condition of community service is a fair and just sentence that properly weighs for § 3553(a)'s considerations.

Those considerations must account for the nature and circumstances of the offense and Ms. Fernandes Anderson's history and characteristics. With respect to the nature and circumstances of the offense, the government will surely argue with some force that Ms. Fernandes Anderson's pursuit of her own self interest and breach of the public trust should be counted in aggravation. By the same token, the Court cannot ignore that Ms. Fernandes Anderson has accepted responsibility, is a first time offender, and has a long record of commendable service to her community.

Another § 3553(a) factor is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The requested sentence satisfies this factor. It is, after all, a request for a sentence *within* what the Guidelines recommend and not a request to vary therefrom. To the extent that the government may argue that the offense conduct is particularly egregious due to Ms. Fernandes Anderson's status as an elected official, that is reflected already in the guidelines by the application of an enhancement under USSG §3B1.3 for a breach of the public trust.

The Court is also charged under the same provision with promoting deterrence and protecting the public. Certainly a sentence of incarceration is not necessary to accomplish these goals. Ms. Fernandes Anderson is no longer a public official or in position to commit a similar offense in the future. There is no evidence she presents any danger to the public. Of note, the

---

[2] As part of her plea agreement, Ms. Fernandes Anderson has already agreed to pay $13,000 restitution to the City of Boston.

probation office has proposed a special condition of supervision that would limit her ability to hold any sort of employment that would permit her to exercise managerial discretion, engage in hiring/terminating staff, or setting salaries or bonuses. This condition is reasonable in light of the circumstances of the case and a less restrictive means of addressing the already minimal risk of recidivism presented by Ms. Fernandes Anderson, a 46 year old first time offender.

Finally, the Court must consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. Regrettably, Ms. Fernandes Anderson now joins a prior Boston city councilman convicted of corruption-related charges and the government may attempt to argue that a sentence of probation would create unwarranted disparity. As explained below, this argument is unavailing because Ms. Fernandes Anderson is not similarly situated. In 2011, former Councilor Chuck Turner was sentenced to 36 months imprisonment, a within-guidelines sentence following a jury trial at which he testified and was determined to have perjured himself; there, the government argued and Judge Woodlock agreed, that the sentence imposed must reflect not only the charged conduct but the Defendant's lack of remorse and attempts to corrupt the trial process. See *United States v. Turner*, 08-cr-10345-DPW-2, *Sentencing Transcript* (ECF #406).

Similarly, Judge Woodlock also imposed a sentence of 42 months on the former state Senator Dianne Wilkerson after she was convicted in a related case of taking bribes; however, as was the case with Chuck Turner, the sentence imposed was within the applicable guidelines range. Additionally, Ms. Wilkerson previously had been convicted of a federal offense, received a probationary sentence, and found in violation of her conditions of probation. Id., *Govt. Sentencing Memorandum* (ECF #288). In contrast, Ms. Fernandes Anderson has no prior criminal convictions, has accepted responsibility for her actions, and has an applicable guidelines

sentencing range of zero to six months.  The proposed sentence creates no unwarranted disparity.

CONCLUSION

Tania Fernandes Anderson respectfully suggests that, on balance, the § 3553(a) inquiry leads to the same result espoused by the Sentencing Guidelines—i.e., that a sentence other than imprisonment is appropriate and will be "sufficient, but not greater than necessary" to fulfill the purposes of sentence.  Accordingly, she requests that the Court impose a term of probation.   She does not object to the special conditions included in the presentence report, nor would she object to a special condition requiring the completion of a substantial amount of community service.  She does not oppose restitution sought by the government.  She asks the Court to impose no fine, as she is unemployed and lacks the ability to pay.

Respectfully submitted,
TANIA FERNANDES ANDERSON
By her Attorney,

*/s/ Scott Lauer*
Scott Lauer, BBO# 667807
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
617.223.8061  (phone)
Scott_Lauer@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that this document and accompanying attached filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 29, 2025.

*/s/ Scott Lauer*
Scott Lauer