# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TANIA FERNANDES ANDERSON,<br><br>Defendant | CRIMINAL No. 24-10364-IT |

## GOVERNMENT'S SENTENCING MEMORANDUM

After winning election to City Council, like all newly elected Boston City Councilors, defendant Tania Fernandes Anderson took an oath that dictated her official duties as a City Councilor.[1]  M.G.L., c. 33 § 24.  According to that oath, Fernandes Anderson solemnly swore to "bear true faith and allegiance to the commonwealth of Massachusetts."  Fernandes Anderson solemnly swore to "faithfully and impartially discharge and perform all duties incumbent" on being a member of the City Council.  Fernandes Anderson solemnly swore to follow the "rules and regulations of the constitution and the laws of the commonwealth."

What this case has laid bare is that Fernandes Anderson's tenure as City Councilor was marked by anything but true faith and allegiance to her constituents and to the city of Boston. Fernandes Anderson acted contrary to the law and impartiality.  Fernandes Anderson's bribe scheme is part of a larger pattern of putting herself first over her constituents, a pattern of fraud marked by concealment and material omissions, and even worse a pattern of creating false

---

[1] Fernandes Anderson actually refused to take the oath of office during one of her swearing-in ceremonies.  https://www.bostonherald.com/2024/01/04/boston-city-councilor-told-to-retake-the-oath-of-office-after-viral-video/

narratives that only exacerbate Fernandes Anderson's fraudulent practices. Fernandes

Anderson's bribe scheme involved using a low-level member of her office to obtain a kickback

and line her own pockets. Fernandes Anderson intentionally hid the bribe scheme from other

City Hall employees and even caused her City Council colleagues to vote on and approve the

bonus for the employee all the while leaving them in the dark about the kickback arrangement.

She fabricated a story for her staff about a bonus and when it came time to accept the kickback,

Fernandes Anderson was brazen enough to take the cash inside City Hall in a bathroom.

Fernandes Anderson's bribe scheme cannot be chalked up to inexperience or ignorance -

instead it is part of a pattern of putting herself first at the expense of her constituents. Before the

bribe scheme, Fernandes Anderson hired her sister and son to be on her City Council staff. She

eventually terminated them, but only because of media pressure and an impending ethics

investigation. After Fernandes Anderson fired them, she then wrote the sister and son bogus

checks from her campaign account while taking kickbacks for herself from the campaign checks.

Fernandes Anderson even used her campaign account to purchase clothes and jewelry for herself,

surely violating any sense of faith or allegiance to the people who donated to her campaign and

helped her get elected.

Because of Fernandes Anderson's egregious breach of the public trust and her pattern of

fraud, deceit and false narratives, the government requests a sentence of one year and one day in

prison, three years of supervised release, restitution of $13,000 and a $200 special assessment.

This sentence is sufficient, but not greater than necessary, to comply with the purposes of 18

U.S.C. § 3553(a).

**FERNANDES ANDERSON'S CRIMINAL CONDUCT**

**A. Fernandes Anderson's Bribery Scheme[2]**

Fernandes Anderson's bribery scheme began to take shape in May 2023 when she approached her staff member (Staff Member A) about taking an unusually high bonus in exchange for kicking the majority of the bonus back to Fernandes Anderson. (PSR, ¶ 19). Fernandes Anderson was able to devise the kickback scheme because of the power that she wielded within city government. (PSR, ¶ 11). Fernandes Anderson was allotted a budget of hundreds of thousands of dollars that she could use as she saw fit, with discretion to set pay and raises for her staff, including bonuses. (PSR, ¶ 13). There is no doubt Fernandes Anderson's crime was facilitated by the fact that as a City Councilor she was granted wide discretion and authority over her office's affairs.

Fernandes Anderson gave bonuses to her other staff members around the same time as the bonus for Staff Member A. But the $13,000 bonus for Staff Member A was more than twice as large as the bonuses for all other staff members combined. (PSR, ¶ 21). In an attempt to stave off the inevitable questions from her staff about the size of Staff Member A's bonus, Fernandes Anderson concocted a false narrative that it was to compensate Staff Member A for prior volunteer work. (PSR, ¶ 20). Of course, Fernandes Anderson never told her staff about the kickback scheme, hiding this fact even though Fernandes Anderson had already approached Staff Member A and the fraud scheme was underway.

Fernandes Anderson also hid the kickback scheme from a city employee whom she emailed to process the bonuses. That email shows that the next highest bonus directed by

---

[2] The government relies on/incorporates by reference the statement of facts contained in the Presentence Investigation Report (PSR). (PSR, ¶¶ 10-29).

Fernandes Anderson was more than $10,000 less than the one to Staff Member A and only

$2,500. (PSR, ¶ 21 and Exhibit A):

---------- Forwarded message ---------
From: **Councilor TFA** <tania.anderson@boston.gov>
Date: Wed, May 3, 2023 at 8:10 PM
Subject: Staff Pay Updates
To:


Hi ████ ,
I hope this email finds you in fantastic spirits.
Please process the following requests:

1. ████████ - increase hours to 30hr/week
2. ████████ - please increase pay to $31.00/hr
3. ████████ - **Please pay a Bonus of $1,000.00**
4. ████████ - Please increase **Salary to $65K/year**
5. ████████ - Please pay a Bonus of $2,500.00
6. ████████ - Bonus of $1,000.00
7. ████████ - Bonus of $500.00
8. ████████ - Bonus of $13,000.00

Hiring a temp position ████ , for $27/hr at 21 hours per week
Will send you her info tomorrow.
I think this will spend all the surplus. Please let me know.


Thank you,

Councilor TFA

After the City Council ultimately approved the bonus, it was Fernandes Anderson who

directed Staff Member A to withdraw the bonus in specific increments. (PSR, ¶ 24). Fernandes

Anderson also directed Staff Member A to meet her on June 9, 2023 in the City Hall bathroom.

Fernandes Anderson took the $7,000 in cash concealed in an envelope. (PSR, ¶¶ 25-26).

**B. Fernandes Anderson's Campaign Fraud Scheme**

On July 25, 2023, which was only about 18 months after Fernandes Anderson started as a

City Councilor in November 2021, she was sanctioned for violating ethics laws by employing

both her sister (the "Sister") and son (the "Son") in her City Council office.  (PSR, ¶ 47).

Fernandes Anderson was ordered to pay a $5,000 fine for the ethics violation.   (PSR, ¶ 47).

 Fernandes Anderson had hired the Sister at an annual salary of $65,000 and had hired the Son at an annual salary of $52,000.  (PSR, ¶ 47).  Fernandes Anderson's hiring of them is just another example of how cavalierly she flouted the rules and professional norms – and not only did Fernandes Anderson employ them, but she wasted no time in giving them raises.  In June 2022, Fernandes Anderson raised the Sister's salary to $70,000 and one month later in July 2022, Fernandes Anderson increased the Son's salary to $70,000, as well.  (PSR, ¶ 47).  Moreover, in June 2022, Fernandes Anderson issued a bonus check to the Sister for $7,000.  (PSR, ¶ 47).  Fernandes Anderson fired both the Sister and the Son in August 2022, but only because the *Boston Globe* was about to issue an article about Fernandes Anderson's family hires.  (PSR, ¶ 47).

 Fernandes Anderson's pattern of concealment touched upon the Son's employment.  Fernandes Anderson was asked directly about her relationship with her Son by a city human resources employee.  (PSR, ¶ 48).  Fernandes Anderson lied to the city employee regarding the nature of that relationship.  The city employee had noticed that the Son shared the same address as Fernandes Anderson and questioned her about it.  (PSR, ¶ 48).  Instead of admitting that it was her Son who lived with her full time, Fernandes Anderson said that he was in the military and was only living with her temporarily.  (PSR, ¶ 48).   The city employee testified at grand jury that the family relationship would have been important to know because "it is another unethical thing."  (PSR, ¶ 49).[3]

---

[3]  In a *Boston Magazine* article on April 9, 2025, Fernandes Anderson tried to minimize the hiring of the Son by characterizing it as a mistake, which is simply not compatible with the explanation she gave to the human resources employee.  The article reads, "[s]he told me that it

```
 1        Q.    -- the general gist of that is correct.  Correct?
 2        A.    Yeah.
 3        Q.    Now at any point did Tania Fernandes Anderson tell
 4   you that ██████████ was her son who was actually living with
 5   her?
 6        A.    No.
 7        Q.    Why would that have been relevant to you?
 8        A.    Because it is another unethical thing.  We just
 9   don't -- we don't do that.
```

The city employee also testified that Fernandes Anderson never revealed her Sister was a close relative either (PSR, ¶ 50):

```
10        Q.    And you were never told that ██████████ was
11   Tania Fernandes Anderson's sister, correct?
12        A.    Correct.
```

Fernandes Anderson's misconduct regarding her Sister and Son did not stop when their employment ended.  Instead, Fernandes Anderson used another fraud scheme - this time involving her campaign fund – to benefit her family, while also taking kickbacks for herself at the same time.  Between September 2022 and November 2023, Fernandes Anderson issued six

---

was, in fact, an innocent mistake. She had only briefly watched an onboarding video that mentioned the prohibition on hiring family members. 'As a hard-working immigrant, in every job that I've gone to, that's what I've done. I've always looked out for my brother and sister and brought them along with me,' she says. Moreover, she maintains that she openly introduced her sister as a staff member to everyone at City Hall—from fellow councilors to central office staff. 'Everyone knew. Everyone,' she says. One councilor even noted to me that 'someone in the central office should have flagged that to her.'" *See* https://www.bostonmagazine.com/news/2025/04/09/tania-fernandes-anderson-corruption-scandal/

checks to the Son from her campaign fund. With the exception of two checks totaling $600, the Son cashed $5,900 in checks. (PSR, ¶ 52). On April 21, 2023, the Son cashed two checks totaling $1,400. (PSR, ¶ 53). It is clear Fernandes Anderson received a kickback on the same day as she deposited $900 in cash into her bank account on April 21, 2023, as well. (PSR, ¶ 53). On August 25, 2023, Fernandes Anderson texted the Son about cashing a $1,500 check from her. (PSR, ¶¶ 54-55).

Meanwhile, between May 2023 and November 2023, Fernandes Anderson issued $12,000 in checks to the Sister from her campaign account that were cashed. (PSR, ¶ 56). The Sister received an additional check for $1,000 that she deposited. Moreover, just as with the Son, Fernandes Anderson also guaranteed herself kickbacks from writing checks to the Sister. For example, on September 18, 2023, Fernandes Anderson and the Sister texted about meeting before going to the bank. (PSR, ¶ 57). Fernandes Anderson wrote a $3,000 campaign check to the Sister that same day and the next day, Fernandes Anderson deposited $1,900 into her bank account. (PSR, ¶¶ 57-58).

Fernandes Anderson wrote a total of $6,500 in checks to the Son and $13,000 in checks to the Sister:

| Campaign Account | Payee | Check # | Date | Amount | Cashed |
|---|---|---|---|---|---|
| Santander x4212 | ███ | #1098 | 05/11/2023 | 1,000.00 | - |
| Rockland x6187 | ███ | #9008 | 06/05/2023 | 1,000.00 | 1,000.00 |
| Rockland x6187 | ███ | #9007 | 06/23/2023 | 1,000.00 | 1,000.00 |
| Rockland x6187 | ███ | #9005 | 08/08/2023 | 1,000.00 | 1,000.00 |
| Rockland x6187 | ███ | #9010 | 08/14/2023 | 2,000.00 | 2,000.00 |
| Rockland x6187 | ███ | #9081 | 09/18/2023 | 3,000.00 | 3,000.00 |
| After Subpoena (OCPF) | ███ | #234 | 11/08/2023 | 1,000.00 | 1,000.00 |
| After Subpoena (OCPF) | ███ | #238 | 11/09/2023 | 3,000.00 | 3,000.00 |
| | | | | **13,000.00** | **12,000.00** |
| Santander x4212 | ███ | #1152 | 09/12/2022 | 250.00 | - |
| Santander x4212 | ███ | #1153 | 09/23/2022 | 350.00 | - |
| Santander x4212 | ███ | #1095 | 04/21/2023 | 700.00 | 700.00 |
| Santander x4212 | ███ | #1096 | 04/21/2023 | 700.00 | 700.00 |
| Rockland x6187 | ███ | #9001 | 07/07/2023 | 1,000.00 | 1,000.00 |
| Rockland x6187 | ███ | #9014 | 08/25/2023 | 1,500.00 | 1,500.00 |
| Rockland x6187 | ███ | #9085 | 09/12/2023 | 500.00 | 500.00 |
| After Subpoena (OCPF) | ███ | #243 | 11/20/2023 | 1,500.00 | 1,500.00 |
| | | | | **6,500.00** | **5,900.00** |

Fernandes Anderson's campaign account fraud was not isolated to just the Sister and Son's employment. She used her campaign card for several personal purchases at Target between April 2023 and August 2024. (PSR, ¶¶ 60-66). The purchases ranged from approximately $282 to approximately $528. The personal nature of the purchases is obvious from the description of the items from Target receipts. The items ranged from candles and throw pillows, to toys and skirts:

| TOYS | | | | APPAREL | | |
| --- | --- | --- | --- | --- | --- | --- |
| 087262884 TRANSFORMERS | T | $7.89 | | 018052524 AND Skirts | N | $28.00 |
| 204072486 MEGAPOKEMON | T | $8.59 | | FURNITURE | | |
| 087266931 TRANSFORMERS | T | $39.49 | | 324076071 HH ACCENT TB | T | $89.99 |
| 087265880 SMASHERS | T | $26.99 | | HOME | | |
| | | | throw pillow | 067080849 Threshold | T | $39.98 |
| | | | | 2 @ $19.99 ea | | |
| | | | bath rug | 064111641 Threshold | T | $14.00 |
| | | | | 324009031 HH CANDLE | T | $29.99 |
| | | | | 066044521 RUGS | T | $200.00 |
| | | | | 065158151 DEC TRAY | T | $35.00 |
| | | | | 066016445 RUGS | T | $25.00 |
| | | | | 324009731 HH FX PLANT | T | $19.99 |

Even worse, Fernandes Anderson deliberately miscategorized the purchases in reports to the Massachusetts Office of Campaign Finance (OCPF) to conceal the fact that the purchases were personal in nature and not related whatsoever to her campaign. (PSR, ¶¶ 60-66). For example, while Fernandes Anderson claimed an August 8, 2024 Target purchase was "food for 8/10/24," the Target receipt did not include any food items, but instead included throw pillows, a bath rug, a candle and other home items. (PSR, ¶ 66).

## C. Fernandes Anderson's Tax Fraud Scheme

Fernandes Anderson also cheated on her 2021, 2022 and 2023 federal tax returns – yet again showing that fraud and deceit were not anomalies for Fernandes Anderson. Fernandes Anderson cheated on her taxes even while abusing her powerful position to misappropriate taxpayer funds. In 2021, Fernandes Anderson omitted an $11,000 check from her tax return. (PSR, ¶ 69). Of the $11,000 check, Fernandes Anderson immediately took $5,000 and deposited it into her personal account, using the remaining $6,000 to make a loan to her campaign. (PSR, ¶ 71). On October 19, 2021, Fernandes Anderson collected a "loan reimbursement" from the campaign account in the form of a personal check to her for $6,000. (PSR, ¶ 72).

Fernandes Anderson cheated on her 2022 and 2023 tax returns because neither return accounted for all of the personal benefits she took from the campaign account. This included the kickbacks from the campaign checks to the Sister and Son, as well as the numerous Target purchases. (PSR, ¶¶ 73-74). Moreover, Fernandes Anderson omitted and thus concealed the $7,000 kickback from Staff Member A on her 2023 tax return. (PSR, ¶ 75).

## THE GUIDELINES AND ENHANCEMENTS

The government has no objections to the PSR and believes that the U.S. Probation Office accurately calculated Fernandes Anderson's advisory guidelines sentencing range of 0-6 months based on a total offense level of 7. (PSR, ¶¶ 37-46). The government agrees that the base offense level is 7, which is increased by two levels because the loss was more than $6,500, but less than $15,000. (PSR, ¶ 38). Fernandes Anderson's offense level should be increased by two levels for abusing a position of trust. (PSR, ¶ 40). Fernandes Anderson does not object to this enhancement.

The abuse of trust enhancement applies in this case for several reasons. First, Fernandes Anderson enjoyed significant professional and managerial discretion. *See* USSG § 3B1.3, Application Note 1 ("public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)). As set forth in the Plea Agreement Statement of Facts, ¶ 5, to which Fernandes Anderson admitted at her Rule 11 hearing, "[a]s a City Councilor, FERNANDES ANDERSON was authorized to hire and terminate staff, set salaries and bonuses, and assign work schedules and duties." Fernandes Anderson was given an allotted budget of hundreds of thousands of taxpayer dollars to pay for her staff. She was entrusted with control

10

over all of this money. Therefore, it was in Fernandes Anderson's managerial and professional discretion to set the bonus for Staff Member A.

Furthermore, Fernandes Anderson's position of public trust "contributed in some significant way to facilitating the commission or concealment of the offense." *See* USSG § 3B1.3, Application Note 1. In this case, Fernandes Anderson's wide discretion in determining the pay and bonus structure for her staff, i.e. her managerial discretion, directly contributed to her ability to carry out the bribe scheme. Similarly, this discretion also allowed her to conceal the offense. Fernandes Anderson awarded the kickback to Staff Member A from a position of power as a City Councilor, a position without having anyone looking over her shoulder. In the process, Fernandes Anderson abandoned the expectations accompanying the oath she took to the City and her constituents.

Fernandes Anderson is entitled to a two-level reduction because she has accepted responsibility for her conduct. (PSR, ¶ 44). Fernandes Anderson is entitled to a two-level reduction as a "zero-point offender." (PSR, ¶ 45).

## THE 3553(A) FACTORS

### A. The Nature and Circumstances of the Offense Warrant a Sentence of 12 Months and 1 Day

Fernandes Anderson's crime is especially egregious because she clearly exploited the wide and expansive discretion that she enjoyed over her office's budget to stuff her own pockets. She directed all aspects of the fraud scheme – Fernandes Anderson is who approached Staff Member A about giving the bonus; Fernandes Anderson is who directed a human resources employee to issue the check; Fernandes Anderson is who voted on the Personnel Order giving the bonus; Fernandes Anderson is who coached Staff Member A about how to withdraw money;

11

and Fernandes Anderson is who directed Staff Member A to meet her in the City Hall bathroom on June 9, 2023.

Perhaps even worse than Fernandes Anderson's sole and complete control over the bribe scheme are the numerous steps she took to conceal it from her other subordinate City Hall employees, the human resources employee and her fellow City Councilors. As described above, Fernandes Anderson held a meeting with her staff to announce the bonuses and falsely told them that she was giving Staff Member A a higher bonus to compensate Staff Member A for previous volunteer work. Fernandes Anderson did not reveal that she was actually bribing Staff Member A and soliciting a kickback from Staff Member A. Fernandes Anderson never told the human resources office that she was actually keeping part of Staff Member A's bonus for herself, nor did she reveal anything about the arrangement when the City Council voted on the personnel order that approved Staff Member A's bonus.

Fernandes Anderson believed the truth about the bonus would never come out because of steps she took to hide and conceal the activities of her office from the public. Fernandes Anderson required her employees to sign a non-disclosure agreement ("NDA") as a condition of their employment. (PSR, ¶ 15). Fernandes Anderson's NDAs barred her staff members from sharing any confidential information without her explicit permission. (PSR, ¶ 15). The category "confidential information" covered by the NDA was defined so broadly that it included all nonpublic information concerning any aspect of the office, its staff or its affairs. (PSR, ¶ 15).

The NDA flew in the face of the transparency and openness that voters expect from their elected officials. Staff Member A was fearful about talking about the bonus because of the NDA and Staff Member A's understanding that Staff Member A "could not discuss outside the office what occurred inside it." (PSR, ¶ 28). Fernandes Anderson's campaign to silence Staff Member

A even continued into the investigation of this case as she reached out by cell phone to Staff Member A after they testified before the grand jury.  (PSR, ¶ 29).  In the wake of this case, in February 2025, the Boston City Council voted to ban the use of NDAs.[4]

Public reporting about reactions from Fernandes Anderson's constituents show feelings of betrayal, distrust and frustration over her scandalous behavior.  On December 9, 2024, a Boston.com[5] poll showed an overwhelming majority, 94% of the people polled, said Fernandes Anderson should resign from her position.[6]  Constituents clearly lost trust in Fernandes Anderson.  Constituent O.O., who voted for Fernandes Anderson, commented, "I am deeply aggrieved that she has taken advantage of and abused the voters' trust."  Meanwhile, Constituent N.O. commented about the high standard of conduct expected for public officials, "[t]here is no room for corruption in our government.  We must have the highest standards of professional conduct and ethics, without exceptions."   N.O. added that the standards are so high to reflect the high taxes charged by the City, "[w]e pay way too much in taxes to accept this type of individual in our government, and we demand better."

Other constituents observed that while many people struggle to make ends meet, they do not break the law to do so.  Constituent M.S. said in a December 6, 2024 *Boston Globe* article,[7] "[i]f this evidence is true, then yeah, I'm highly disappointed . . . . I'm sorry for her financial troubles, but why do we have to pay for it?  All of us are struggling."   M.S. further stated, "there's a lot of good people who have migrated to the United States that don't participate in

---

[4] https://www.bostonglobe.com/2025/02/05/metro/boston-city-council-votes-bans-councilors-staff-ndas/?p1=BGSearch_Overlay_Results
[5] https://www.boston.com/community/readers-say/2024/12/09/extremely-disappointed-heres-why-readers-want-tania-fernandes-anderson-to-resign/
[6] Fernandes Anderson did not announce her resignation until June 12, 2025.
[7] https://www.bostonglobe.com/2024/12/06/metro/boston-councilor-tania-fernandes-anderson-indictment-constituent-reaction/?p1=BGSearch_Advanced_Results

criminal activities and do what they have to do to survive." Constituent A.R. observed that $7,000 is a substantial amount of money, "[t]o me, $7,000 is a lot of money."

Other constituents took notice of Fernandes Anderson's other ethical improprieties, including V.S., who stated to Boston.com as part of the December 9, 2024 poll, "[s]he should resign because this is not her first questionable act. She should have resigned after we found out she hired her sister and son." S.H. said Fernandes Anderson's actions amounted to a "slap in the face," as Fernandes Anderson was caught "steal[ing] from others."

In an April 12, 2025 *Boston Globe* article,[8] C.T-J. stated, "[y]ou're here to serve the people, not serve your purpose." S.Y. shared a similar sentiment, "[y]ou know she is supposed to look out for the community, and she's doing nothing but ripping us off." Regrettably for Fernandes Anderson's constituents, her numerous ethical and criminal acts amounted to serving her "own purpose" and not "looking out" for their interests.

### B. Fernandes Anderson's History and Characteristics Weigh in Favor of a Sentence of 12 Months and 1 Day

Fernandes Anderson's conduct in this case demonstrates anything but faith to the law and to the people whom she was elected to serve. Instead of putting her constituents and the City first, Fernandes Anderson put herself first by stealing taxpayer money to line her own pockets. Giving a bonus tied to a kickback is simply not compatible with the impartiality that Fernandes Anderson had solemnly swore to follow when she was elected. Fernandes Anderson gave a bonus to Staff Member A that was more than double the bonuses awarded to all of her other staff members combined. Fernandes Anderson fabricated a story for the staff to respond to questions about size of the bonus as compared to other staff members' bonuses.

---

[8] https://www.bostonglobe.com/2025/04/11/metro/boston-tania-fernandes-anderson-guilty-plea-resignation-reactions/?p1=BGSearch_Advanced_Results

Fernandes Anderson undoubtedly overcame substantial personal hardships to win election to the City Council. Fernandes Anderson's perseverance is commendable, but despite overcoming such challenges, Fernandes Anderson, repeatedly, resorted to criminal and unethical conduct. The pattern and repeated instances of misconduct show this case cannot simply be characterized as a one-off mistake or accident.

Moreover, Fernandes Anderson has demonstrated an unwillingness to embrace true contrition for her crimes and other ethical lapses. Fernandes Anderson's conduct during the pendency of this case belies the pattern of fraudulent and deceptive conduct. Most recently, before her last City Council meeting prior to resigning, Fernandes Anderson emailed her constituents inviting them to the meeting to "celebrate" her departure, without any focus on the scandal giving rise to her resignation.[9]

---

[9] https://www.bostonherald.com/2025/06/24/disgraced-boston-city-councilor-tania-fernandes-anderson-plans-to-celebrate-at-last-meeting-one-last-stand/



A few months earlier, around the same time she pleaded guilty, Fernandes Anderson participated in the *Boston Magazine* cover interview discussed above. Fernandes Anderson posed for several staged photos as part of the article, and it was clear that she dictated the narrative portrayed in the article. Fernandes Anderson declined to discuss the charges underlying her case, "leaving . . . questions" unanswered.

Fernandes Anderson claimed in the *Boston Magazine* article that she "always put[s]" herself "second" and that she "need[ed] to work on this pattern of obsessively helping people." In a not-so-subtle way, Fernandes Anderson pushed a narrative that it was her desire to help Staff Member A that led to her downfall. That Fernandes Anderson gave Staff Member A a job on her

staff, that Fernandes Anderson helped Staff Member A with a large bonus – these were the things that led to her criminal case.  That narrative is false.

In this case, Fernandes Anderson clearly put herself first (not second).  Fernandes Anderson's bribe was not an accident.  Fernandes Anderson's bribe was not an innocent mistake. Instead, the bribe is just another chapter in Fernandes Anderson's book of lying and cheating. Nearly immediately after Fernandes Anderson assumed office as a City Councilor, she hired both her Sister and her Son against City policy and ethics rules.  She quickly gave them raises. Fernandes Anderson likely would have kept the Son and Sister employed on City Hall payroll had she not been facing pressure under the threat of a forthcoming *Boston Globe* article about the illegal employment arrangement.

After the Sister and Son were no longer employed by her, Fernandes Anderson found another way to break the rules and steer money towards them, while also assuring she got a cut of the money as well.  This time Fernandes Anderson defrauded her campaign account, writing checks to the Son and Sister and then taking a kickback at the same time.  Fernandes Anderson abused her campaign account in other significant ways.  She essentially used the account as her personal piggybank, regularly using the campaign debit card at Target for her own personal items and concealing the transactions by categorizing them as legitimate campaign purchases with OCPF.

Finally, the manner in which Fernandes Anderson cheated on her taxes is also indicative of her personal characteristics.  By omitting $11,000 in income earned in 2021 and flagrantly embezzling money from her campaign account in 2022 and 2023 for herself and her family, Fernandes Anderson again carried on her pattern of fraud and deceit.

C. **A Sentence of 12 Months and 1 Day Reflects the Seriousness of the Offense, Promotes Respect for the Law, Provides Adequate Punishment, and Serves General and Specific Deterrence**

The government's sentencing recommendation further reflects the seriousness of the offense, promotes respect for the law, provides adequate punishment and serves general and specific deterrence. Four cases in this District with similarities to this one resulted in terms of incarceration. In the case of Sean O'Donovan, who was prosecuted for bribing the brother of a Police Chief, O'Donovan was sentenced to 18 months' imprisonment (*United States v. O'Donovan*, Docket No. 22-10141-IT). In the case of former Boston Planning and Development Agency Assistant Director John M. Lynch, who was prosecuted for soliciting and accepting bribes in connection with a Boston Zoning Board scheme, Lynch was sentenced to 40 months' imprisonment (*United States v. John M. Lynch*, Docket No. 19-10319-PBS). In the case of former state senator Dianne Wilkerson, who was prosecuted for accepting a series of bribes totaling $23,500 from a government informant and undercover agents, Wilkerson was sentenced to 3.5 years in prison. (*United States v. Dianne Wilkerson*, Docket No. 08-10345-DPW). Former City Councilor Charles "Chuck" Turner was sentenced to three years in prison for a $1,000 bribe he accepted from an FBI informant. (*United States v. Charles "Chuck Turner,"* Docket No. 08-10345-DPW).

This case departs from the O'Donovan, Lynch, Turner, and Wilkerson prosecutions in an important way. Those cases involved sting operations with government agents and cooperating witnesses. This case did not. Fernandes Anderson bribed Staff Member A long before the investigation into her began. And Fernandes Anderson likely believed she was going to get away with it under the cloak of her office's non-disclosure agreement. The difference between Fernandes Anderson and O'Donovan/Lynch/Wilkerson/Turner is that Fernandes Anderson's

18

whole undoing was a creation of all her own making.  No one put her in a scenario where she

was asked to bribe Staff Member A.  There was no predicated solicitation by a government agent

to engage in wrongdoing.  No one else suggested to Fernandes Anderson that she engage in a

fraud scheme.  Indeed, Fernandes Anderson's misconduct demonstrates no reluctance in

following through on the bribe scheme.  She dictated every material aspect of the bribe scheme

from holding meetings with staff, sending an email to the City Hall employee, choosing the

bathroom location and telling Staff Member A to divide up the withdrawals in a certain manner.

At every step of the way, Fernandes Anderson could have abandoned the plan and redeemed

herself.  She did not.

This sentence also promotes respect for the law.  Many of Fernandes Anderson's

constituents appear to have lost faith in their public officials.  Fernandes Anderson was entrusted

with her powerful position by the public.  She was entrusted to serve the public and to use her

office and budget for the good of the people, not for the good of herself.  The public should

believe that government works honestly and transparently.  It is a sad day when the public cannot

trust their elected officials to represent them honestly and transparently.

Finally, as to specific deterrence, Fernandes Anderson's history shows that she never

learns her lesson.  When she terminated her Sister and Son from City Hall employment, she

came up with the scheme using her campaign account to continue steering money towards them

while getting kickbacks herself.  Fernandes Anderson's record shows that instead of abandoning

bad conduct when she is caught, Fernandes Anderson finds new means of manipulation.  When

Fernandes Anderson hired Staff Member A, which was after the ethical reprimand involving her

Sister and Son, she made a point of emailing a City Hall human resources employee to say she

and Staff Member A were not related, even though they were.  *See* Exhibit B.  And even after

facing a sanction from OCPF and being fined $5,000 for hiring her Sister and Son in July 2023, Fernandes Anderson continued using her campaign fund for personal purchases at Target while disguising them as campaign-related expenditures. Fernandes Anderson's criminal conduct in the instant case was not an isolated anomaly, but rather a reflection of her pattern of greed, deceit, and abuse of power.

## CONCLUSION

For those reasons stated above, the government respectfully requests a sentence of one year and one day in prison, three years of supervised release, restitution of $13,000 and a special assessment of $200.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

/s/ *John T. Mulcahy*
Dustin Chao
John T. Mulcahy
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ John T. Mulcahy*
John T. Mulcahy
Assistant U.S. Attorney

Date: August 29, 2025